IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 19-cv-02910-PAB-NYW

ZACHARIAH ROBERTSON, individually and on behalf of others similarly situated,

    Plaintiff,

v.

REP PROCESSING, LLC, d/b/a RIMROCK ENERGY PARTNERS,

    Defendant.

---

**ORDER**

---

This matter is before the Court on Defendant and Third-Party Defendant's Motion to Compel Arbitration and for Stay of Proceedings [Docket No. 28]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On October 11, 2019, plaintiff Zachariah Robertson sued defendant REP Processing, Inc., d/b/a Rimrock Energy Partners ("Rimrock") under the Fair Labor Standards Act ("FLSA") seeking to recover unpaid overtime wages that he argues he and similarly situated individuals are owed. Docket No. 1 at 1, ¶ 1. Plaintiff alleges that he has worked for Rimrock since March 2019 and continues to do so. *Id.* at 2, ¶ 8. He alleges that he and the putative class members regularly worked over 40 hours per week, but that Rimrock failed to pay its employees for any overtime hours worked. *Id.* at 5-6, ¶¶ 31, 38, 45-46. On November 11, 2019, Rimrock filed a third-party complaint

[Docket No. 10] against Kestrel Field Services, Inc. ("Kestrel"), seeking indemnification from Kestrel in the event that Rimrock were found liable to plaintiff for FLSA violations. Docket No. 10 at 1. However, on September 24, 2020, the Court struck Rimrock's third-party complaint and dismissed Kestrel as a party from this lawsuit. *See* Docket No. 49.

Rimrock is a midstream oil and gas company; Kestrel is a staffing company that provides temporary workforce services to oil and gas companies. Docket No. 28 at 2. In 2019, Rimrock and Kestrel entered into a Master Services Agreement ("MSA") for Kestrel to employ and supply workers to Rimrock for one of its projects. *Id.* According to Rimrock, "a consultant to Rimrock instructed Kestrel to assign [plaintiff] to" the Rimrock project, which Kestrel did. *Id.* Plaintiff was hired to work only on the Rimrock project. *Id.* As part of the hiring process, plaintiff entered into a Mutual Arbitration Agreement ("the arbitration agreement") with Kestrel. *Id.* at 2-3. The arbitration agreement is "between [plaintiff] and Kestrel Field Services, Inc.," and provides, in part:

> The Company[1] and I mutually agree and contract to resolve by arbitration all past, present, or future claims or controversies, including, but not limited to, claims arising out of or related to my application for employment, employment, or termination of my employment that the Company may have against me or I may have against: (i) the Company or its subsidiaries or affiliated entities ("Kestrel Entities"); (ii) Kestrel Entities officers, directors, employees, or agents in their capacity as such or otherwise, (iii) Kestrel Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (iii) all of their successors and assigns.

Docket No. 28-2 at 6. The agreement was signed by plaintiff. *Id.* at 8. Plaintiff worked

---

[1] "Company" is defined in the agreement as Kestrel Field Services, Inc. Docket No. 28-2 at 6.

on the Rimrock project from March 18, 2019 until late August 2019, at which time the project was completed. Docket No. 28 at 3.

On August 26, 2019, plaintiff filed an FLSA collective action complaint against Kestrel in the District Court of Colorado. *Id.*; *see also Robertson v. Kestrel Field Servs., Inc.*, No. 19-cv-02409-RBJ. Plaintiff alleged that he worked for Kestrel and that Kestrel had failed to pay plaintiff his earned overtime. *See* Docket No. 28 at 3; *see also* No. 19-cv-02409-RBJ, Docket No. 2 at 2, ¶¶ 8-9. After Kestrel answered the complaint and asserted the arbitration agreement as a defense, *see* Docket No. 28 at 3-4; *see also* No. 19-cv-02409-RBJ, Docket No. 11 at 7, ¶ 1, plaintiff voluntarily dismissed his lawsuit against Kestrel. Docket No. 28 at 4; *see also* No. 19-cv-02409-RBJ, Docket No. 13. Plaintiff then sued Rimrock in this separate action. *See* Docket No. 1. Rimrock now seeks to compel arbitration in this case pursuant to the arbitration agreement between Kestrel and plaintiff. *See* Docket No. 28.[2]

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). Consequently, the Court must "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861,

---

[2] Although the motion to compel was filed jointly by Rimrock and Kestrel, *see* Docket No. 28, because the Court has dismissed Kestrel as a defendant in this matter, *see* Docket No. 49, the Court construes the motion to compel as being filed only by Rimrock, and will consider only the arguments as they pertain to Rimrock.

866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "In addition, this liberal policy 'covers more than simply the substantive scope of the arbitration clause,' and 'encompasses an expectation that [arbitration] procedures will be binding.'" *Id.* (citation omitted).

However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Accordingly, a court considering a motion to compel arbitration must initially examine the scope of the parties' arbitration agreement and then determine whether the plaintiff's claims are within that scope. *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (citing *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)). "To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Id.* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc*., 252 F.3d 218, 224 (2d Cir. 2001)). First, "a court should classify the particular clause as either broad or narrow." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224. If the arbitration clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue" that will generally not be arbitrated. *Id.* "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties'

rights and obligations under it." *Id.*

## III. ANALYSIS

Rimrock argues that it can enforce the arbitration agreement as a non-signatory because (1) it was a third-party beneficiary of the arbitration agreement and (2) plaintiff is equitably estopped from disavowing the arbitration agreement. Docket No. 28 at 2. In addition, Rimrock argues that, regardless of whether plaintiff is required to arbitrate his claims, "he has waived his right to pursue a collective action." *Id.* Plaintiff does not dispute that a valid arbitration agreement exists in this case. Docket No. 36 at 1. However, plaintiff argues that his claims against Rimrock do not fall under the scope of the arbitration agreement. *Id.* Specifically, plaintiff asserts that, because he "never agreed to arbitrate with Rimrock," his claims against Rimrock are outside of the arbitration agreement's purview. *Id.* In the alternative, plaintiff contends that Rimrock is not a third-party beneficiary to the arbitration agreement, *id.* at 8, and that Rimrock cannot compel arbitration under equitable estoppel principles. *Id.* at 11.

Before reaching Rimrock's arguments – that Rimrock may enforce the arbitration agreement as a third-party beneficiary or through equitable estoppel principles – the Court must first determine whether plaintiff's claims fall within the scope of the arbitration agreement. "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) ("[A]rbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Under Colorado law,[3] "[t]he primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). The parties' intent "is to be determined primarily from the language of the instrument itself." *USI Prop. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997). "Courts possess no authority to rewrite contracts and must enforce unambiguous contracts in accordance with their terms." *Radiology Prof. Corp. v. Trinidad Area Health Ass'n*, 577 P.2d 748, 751 (Colo. 1978); *see also May v. United States*, 756 P.2d 362, 369 (Colo. 1988) (stating that unambiguous contracts must be "enforced according to their plain language").

Given that the Court must ascertain the contracting parties' intent from the agreement's plain language, the Court first considers the contract provision at issue. The arbitration agreement provides that plaintiff and Kestrel agree to resolve "all past, present, and future claims or controversies, including, but not limited to, claims arising out of or related to [plaintiff's] application for employment, employment, or termination

---

[3] The Court "appl[ies] general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989); *see also Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). Rimrock cites Colorado law for the governing standards, and plaintiff does not argue that Colorado law does not apply. *See* Docket No. 36. Therefore, the Court applies Colorado law to the issue of contract interpretation. *See Terlizzi v. Altitude Mktg., Inc.*, No. 16-cv-01712-WJM-STV, 2018 WL 2196090, at *7 (D. Colo. May 14, 2018).

of [plaintiff's] employment that [Kestrel] may have against [plaintiff] or [plaintiff] may have against: (i) [Kestrel] or its subsidiaries or affiliated entities ("Kestrel Entities"); (ii) Kestrel Entities officers, directors, employees, or agents in their capacity as such or otherwise, (iii) Kestrel Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (iii) all of their successors and assigns." Docket No. 28-2 at 6.  Plaintiff argues that this clause is limited to only claims plaintiff has against Kestrel or that Kestrel has against plaintiff and asserts that his claims against Rimrock are not covered by this agreement.  Docket No. 36 at 3-4.  Defendant suggests a much broader interpretation, arguing that, under this agreement, plaintiff agreed to arbitrate all "disputes involving Kestrel" or "disputes that arise out of the employment relationship between [plaintiff] and Kestrel."  Docket No. 28 at 7-8.

    The Court finds that the broad language that Rimrock seeks to engraft into the contract – that *all* disputes arising out of plaintiff's employment must be arbitrated – is not supported by the contract's plain language.  The agreement does mandate arbitration for all "claims arising out of or related to [plaintiff's] . . . employment" – but that mandate is limited to claims between plaintiff and Kestrel.  Docket No. 28-2 at 6. There is no mention of Rimrock, or of Kestrel's customers generally, despite the fact that the agreement expressly identifies a number of entities whose claims would be subject to the agreement.  *See id.*  If the parties intended to require arbitration for plaintiff's claims against Kestrel's customers, they could have included Kestrel's customers in the list of applicable entities; or, if the parties intended to require arbitration for any dispute arising out of plaintiff's employment, regardless of who the

7

dispute is with, it could have included that language in the agreement.  *See Shoals v. Owens & Minor Distribution, Inc.*, 2018 WL 5761764, at *10 (E.D. Cal. Oct. 31, 2018) ("If [the staffing company] almost exclusively sends its employees to work for its customers, it certainly could have foreseen that its employees may have claims against its customers and worded its standard arbitration agreement accordingly.").

Rimrock nevertheless asserts that plaintiff's claims fall within the scope of the arbitration agreement, Docket No. 28 at 3, providing a multi-step analysis to justify its conclusion.  *Id.* at 6.  Rimrock suggests that, because the agreement uses the terms "claims," "controversies," and "disputes," each of these terms must have a distinct meaning.  *Id.*  Relying on Black's Law Dictionary definitions of "dispute" and "controversy," Rimrock posits that these terms refer to the "broader context that may give 'rise to a particular lawsuit' or 'justiciable dispute' rather than simply claims against certain parties."  *Id.* at 7 (quoting Black's Law Dictionary).  According to Rimrock, plaintiff's claims fall within the scope of the arbitration agreement because the present dispute is "a dispute that involves both Robertson and Kestrel" and "is a dispute that arises out of Robertson's employment relationship with Kestrel."  *Id.*

However, Rimrock does not – and can not – point to any language in the arbitration agreement supporting this broad interpretation of the contractual language. Simply put, Rimrock has "stretched Black's definition of 'controversy' and 'dispute' past their literal meaning," *Bock v. Salt Creek Midstream LLC*, 2020 WL 3989646, at *12

(D.N.M. July 15, 2020),[4] in an attempt to manufacture an interpretation that is inconsistent with the agreement's plain language.  When interpreting contracts, "strained or unnatural interpretations must be avoided."  *Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 786 (Colo. App. 2000).

Nothing in the plain language of the contract indicates that the terms "controversy" or "dispute" should be interpreted so broadly as to include any and all disputes arising out of plaintiff's employment,[5] and nothing in the plain language of the agreement – entered into by plaintiff and Kestrel only – indicates the parties' intent to include plaintiff's claims against Rimrock.  *See Simpson*, 938 P.2d at 173; *see also Bock*, 2020 WL 3989646, at *14.  Instead, the plain language is clear: plaintiff and

---

[4] *Bock* involved the interpretation of an arbitration agreement that appears to be identical to the one at issue here; in that case, Kestrel sought to compel arbitration of a plaintiff's claims against an oil and gas midstream operator at which Kestrel had staffed the plaintiff.  2020 WL 3989646, at *2.  In arguing that the plaintiff's claims were in the scope of the arbitration agreement, Kestrel made identical arguments to those made here.  *See, e.g., id.* at *10.  The magistrate judge rejected Kestrel's arguments, finding that the plaintiff's claims against the non-signatory to the arbitration agreement were outside of the arbitration agreement's scope and recommending that the district judge deny Kestrel's motion to compel.  *Id.* at *14.  At the time of the issuance of this order, the district judge has not yet accepted or rejected the recommendation.

[5] Moreover, the Court disagrees with Rimrock's contention that the terms "claim," "dispute," and "controversy" each must have a distinct definition.  *See Bock*, 2020 WL 3989646, at *13 (describing in detail how the terms are used interchangeably throughout the arbitration agreement); *see also, e.g.*, Docket No. 28-2 at 6, ¶ 2 (in paragraph titled "How to Initiate Arbitration of Covered Disputes" (emphasis omitted), stating that the arbitration process requires that the aggrieved party "make a written 'Request for Arbitration' of *any claim* to the other party") (emphasis added); *see also id.* at 7 (stating that the arbitration agreement is a condition of employment and that continued employment after receipt of the agreement is "[plaintiff's] *agreement to arbitrate disputes*," but also stating that, pursuant to agreement, parties are "agreeing to arbitrate *claims covered by this agreement*" (emphasis altered).

9

Kestrel agreed to arbitrate claims arising from plaintiff's employment between plaintiff and Kestrel or its subsidiaries or affiliated entities, which demonstrates the parties' intent to require arbitration for only these claims. The Court declines Rimrock's invitation to rewrite the contract in contravention of this intent. *See Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998) ("The court's duty is to interpret and enforce contracts as written between the parties, not to rewrite or restructure them."); *see also Radiology Prof. Corp.,* 577 P.2d at 751. The Court finds that plaintiff has met his burden of demonstrating that his claims fall outside the scope of the arbitration agreement.[6] *See Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc*., 2008 WL 2673925, at *10 (D. Utah July 7, 2008) (plaintiff has burden of demonstrating that dispute falls outside scope of arbitration provision).

In the alternative, Rimrock asserts that it may enforce the arbitration agreement as a third-party beneficiary. Docket No. 28 at 9. "A person not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." *Parrish Chiropractic Centers, P.C. v. Progressive*

---

[6] On April 15, 2020, Kestrel submitted a notice of supplemental authority [Docket No. 48] in which a District of Wyoming court granted a motion to compel arbitration in what Kestrel classifies as a "nearly identical" factual scenario. Docket No. 48 at 3 (citing *Snow v. Silver Creek Midstream Holdings, LLC*, District of Wyoming Case No. 19-cv-00241). Notwithstanding the fact that Kestrel is no longer a party and the Court need not consider its filings, the Court finds that the case cited by Kestrel is distinguishable. In *Snow*, the arbitration clause at issue contained a provision stating that "[t]he Employee and the Company agree to arbitrate all claims that have arisen or will arise out of Employee's employment or termination from the Company." *See Snow*, Docket No. 41 at 6. No such broad language can be found in the arbitration clause here.

10

*Cas. Ins. Co.,* 874 P.2d 1049, 1056 (Colo. 1994). "While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both." *Id.*

Rimrock's argument that the agreement and surrounding circumstances indicate an intent to benefit Rimrock is based on its contention that "disputes" and "controversies" can be interpreted broadly to include any dispute arising out of plaintiff's employment, *see* Docket No. 28 at 10 – an argument which the Court has already rejected. The Court finds that the plain language of the arbitration agreement demonstrates no intent to benefit Rimrock. The agreement was entered into by plaintiff and Kestrel, and covers potential claims by and against a number of entities – *inter alia*, Kestrel and its subsidiaries, officers, directors, employees, or agents – but does not cover claims by or against Rimrock or Kestrel's customers. *See* Docket No. 28-2 at 6. In fact, the agreement makes no mention of Kestrel's customers. *See id.* Thus, the plain language of the agreement disproves any intent to benefit Rimrock. The Court finds that Rimrock is not a third-party beneficiary to the contract. *See Genberg v. Porter*, 935 F. Supp. 2d 1094, 1101-02 (D. Colo. 2013) (where the contract "define[d] the rights and obligations" between the signatories but "[did] not mention any of the defendants," the contract did "not manifest any intention by [the signatories] to impart a benefit to the defendants" and "any benefit received by the defendants [was] incidental and insufficient to render the defendants third party beneficiaries").

Rimrock also attempts to force arbitration under an equitable estoppel theory. Rimrock argues that plaintiff cannot "avoid his obligations under the Arbitration

11

Agreement" by suing Rimrock over Kestrel. Docket No. 28 at 12-13. Under Colorado law, equitable estoppel arises "where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence." *V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1210 (Colo. 2010). "However, Colorado law has never favored estoppel." *Santich v. VCG Holding Corp.*, 443 P.3d 62, 65 (Colo. 2019); *see also Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo. 1991) ("The doctrine of estoppel is not favored . . . and will be applied only when all of the elements constituting an estoppel are clearly shown."). Equitable estoppel will not be applied unless the proponent makes a clear showing of four elements:

> [T]he party against whom the estoppel is asserted must know the [relevant] facts; that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; the party claiming estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Santich*, 443 P.3d at 65 (quoting *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 841 (Colo. 1992) (brackets in original)).

The Court addresses the third prong first, as it is dispositive. Rimrock argues that "[it] did not know that [plaintiff] would disregard his obligations under the Employment Agreement by asserting Rimrock was his employer, claiming he was not bound to arbitrate on an individual basis, and artfully pleading his claims against only Rimrock." Docket No. 28 at 12. Not only does Rimrock now explain how these are the relevant "true facts" necessary to the equitable estoppel inquiry, but Rimrock does not explain how plaintiff disregarded his obligations under his employment agreement with

12

Kestrel by suing Rimrock in federal court. As set out above, plaintiff's claims against Rimrock are not covered by the arbitration agreement. As a result, plaintiff is not required to arbitrate his claims against Rimrock. If, as Rimrock suggests, plaintiff has wrongfully named Rimrock as his employer, that issue will be resolved through the litigation. But Rimrock cannot compel arbitration simply by asserting that plaintiff has named the wrong defendant and, by doing so, violated his employment agreement to the detriment of Rimrock. Because Rimrock cannot demonstrate all four elements of equitable estoppel, *see Shell Western E&P, Inc. v. Board of County Comm'rs of Dolores County*, 923 P.2d 251, 254 (Colo. App.1995) ("The burden of establishing an estoppel falls on the party asserting it . . . and all elements of equitable estoppel must be shown.") (citation omitted), the Court declines to apply this disfavored doctrine.

Finally, Rimrock argues that, even if the Court were to deny its motion to compel, the Court should find that this case must proceed on an individual, rather than class, basis. Docket No. 28 at 14. The arbitration agreement provides that plaintiff "waive[s] any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action." Docket No. 28-2 at 6. Rimrock asserts that, because the class action waiver mentions "disputes," but not "claims," plaintiff's "waiver of his class action or collective action rights are therefore not tied to [his] claims but to the broader 'disputes' that involve Kestrel." Docket No. 28 at 14. However, having already rejected Rimrock's proposed broad definition of "disputes," and having found that the arbitration agreement does not apply in this case or to plaintiff's claims against Rimrock, the Court rejects Rimrock's assertion that plaintiff must proceed individually pursuant to the

13

agreement's class action waiver.  Accordingly, Rimrock's motion to compel will be denied.

## IV.  CONCLUSION

For these reasons, it is

**ORDERED** that Defendant and Third-Party Defendant's Motion to Compel Arbitration and for Stay of Proceedings [Docket No. 28] is **DENIED**.

DATED September 24, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge