IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 19-cv-02910-PAB-NYW

ZACHARIAH ROBERTSON, individually and on behalf of others similarly situated,

Plaintiff,

v.

REP PROCESSING, LLC, d/b/a RIMROCK ENERGY PARTNERS,

Defendant.

_____

### ORDER

_____

This matter is before the Court on the Motion for Reconsideration of Orders Denying Motion to Compel Arbitration [Doc. 50] and Granting Motion to Strike [Doc. 49] filed by REP Processing, L.L.C. d/b/a Rimrock Energy Partners' ("Rimrock") [Docket No. 51]. Plaintiff responded, Docket No. 59, to which Rimrock replied. Docket No. 62.

## I. BACKGROUND

Rimrock seeks reconsideration of two orders. Docket No. 51 at 1. In one order, the Court denied Defendant and Third-Party Defendant's Motion to Compel Arbitration and for a Stay of Proceedings [Docket No. 28].[1] Docket No. 50. In another order, the Court granted Plaintiff's Motion to Strike or Sever Third-Party Complaint [Docket No. 22] and denied Defendant/Third-Party Plaintiff REP Processing, L.L.C. d/b/a Rimrock

_____

[1] The motion to compel was jointly filed by defendant and Kestrel Field Services, Inc. ("Kestrel"), *see* Docket No. 28; however, because the Court dismissed Kestrel as a defendant in this matter, Docket No. 49, the Court construed the motion to compel as being filed only by defendant. *See* Docket No. 50 at 3 n.2.

Energy Partners' Motion for Leave to Amend Third-Party Complaint [Docket No. 27].

Docket No. 49.  The background facts and procedural history are discussed in those

two orders and will not be repeated here except to the extent necessary to resolve the

motion to reconsider.

## II.  LEGAL STANDARD

The parties dispute the proper legal standard under which the Court should

review the motion to reconsider.  *Compare* Docket No. 59 at 2–3 *with* Docket No. 62 at

1–3.  Plaintiff argues that the Court must review Rimrock's motion under Federal Rule

of Civil Procedure 60(b) and states that "[r]econsideration under Rule 60(b) is

extraordinary, and may be granted only in exceptional circumstances" that do not apply

here.  Docket No. 59 at 3 (quoting *Freeman v. Watkins*, No. 06-cv-00405-MSK-KMT,

2010 WL 4781156, at *2 (D. Colo. Nov. 17, 2010)).  Plaintiff believes Rule 60(b) applies

because, he argues, Rimrock's motion is untimely and therefore cannot be considered

under Rule 59(e), which "governs a motion for reconsideration filed within 28 days of

judgment." *Id.* at 3.  Plaintiff contends that, since Rimrock filed its motion for

reconsideration on October 26, 2020, 32 days after the Court's orders, Rule 59(e)

cannot apply.  *Id.*  Instead, plaintiff argues, Rule 60(b) provides the proper framework.

*Id.*  Rimrock insists that its motion was timely filed and that Rule 59 does not apply

because that rule sets forth procedures regarding motions for new trial or to alter or

amend judgment, but neither of the Court's orders is a final judgment.  Docket No. 62 at

1–2.  Rimrock argues that nothing in Rule 59(e) requires that motions to reconsider

interlocutory orders be filed within 28 days of the order.  *Id.*

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp. v. Teter,* 313 F.2d 91, 92 (10th Cir. 1962). Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018).

Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. Rimrock "does not contend [that] there is any change in the controlling law, and it has not presented new evidence previously unavailable for the Court's review. However, Rimrock respectfully suggests that the Court's . . . orders should be reconsidered to correct clear error in the orders or to prevent manifest injustice." Docket No. 62 at 3. Thus, the Court need not wade into the parties' dispute on which standard to apply to Rimrock's motion.

Under the clearly erroneous standard, "the reviewing court [must] affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has

been committed.'" *Ocelot Oil Corp*. *v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III.  ANALYSIS

### A.  Order Denying Rimrock's Motion to Compel Arbitration

Rimrock, a midstream oil and gas company, entered into an agreement with Kestrel in 2019 for Kestrel to employ and supply workers to Rimrock for one of its projects.  Docket No. 28 at 2.  According to Rimrock, "a consultant to Rimrock instructed Kestrel to assign [plaintiff] to" Rimrock's project, which Kestrel did.  *Id.*  As part of the hiring process, plaintiff entered into a "Mutual Arbitration Agreement" with Kestrel.  *Id.* at 2–3.  The arbitration agreement is "between [plaintiff] and Kestrel." Docket No. 28-2 at 6.

The arbitration agreement provides, in part:

> The Company[2] and I mutually agree and contract to resolve by arbitration all past, present, or future claims or controversies, including, but not limited to, claims arising out of or related to my application for employment, employment, or termination of my employment that the Company may have against me or I may have against: (i) the Company or its subsidiaries or affiliated entities ("Kestrel Entities"); (ii) Kestrel Entities officers, directors, employees, or agents in their capacity as such or otherwise, (iii) Kestrel Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (iii) all of their successors and assigns.

*Id.*  Even though the arbitration agreement is between plaintiff and Kestrel, Rimrock sought to compel arbitration of plaintiff's claims against Rimrock pursuant to the agreement.  Docket No. 28.

In the briefing on the original motion, the parties disagreed about how to read the

---

[2] "Company" is defined in the agreement as Kestrel.  Docket No. 28-2 at 6.

arbitration agreement.  Plaintiff argued that the clause enumerating the entities that are subject to the agreement, excerpted above, shows that the agreement is limited to only claims plaintiff has against Kestrel, or that Kestrel has against plaintiff, and plaintiff asserts that his claims against Rimrock are not covered by the agreement.  Docket No. 36 at 3–4.  Rimrock, on the other hand, suggested a broader reading of the agreement and argued that plaintiff agreed to arbitrate all "disputes involving Kestrel" or "disputes that arise out of the employment relationship between [plaintiff] and Kestrel."  Docket No. 28 at 7–8.  The Court found that Rimrock's broad reading of the arbitration agreement was not supported by the agreement's plain language and held that the arbitration requirement is limited to claims between plaintiff and Kestrel.  Docket No. 50 at 7.

Rimrock also argued that the agreement's use of terms "claims," "controversies," and "disputes" indicates that plaintiff's claims fall within the scope of the agreement as a "dispute" involving both plaintiff and Kestrel.  Docket No. 28 at 6–7.  The Court, however, held that Rimrock did not and could not point to any language in the arbitration agreement that supported its broad interpretation of the contractual language because nothing in the agreement's language indicated an intent to include plaintiff's claims against Rimrock.  Docket No. 50 at 8–9.  Thus, the Court held that plaintiff demonstrated that his claims fall outside of the scope of the arbitration agreement.  *Id.* at 9.

Next, Rimrock argued that it could enforce the arbitration agreement as a third-party beneficiary.  Docket No. 28 at 9.  The Court, however, noted that it already rejected the argument that the plain language or circumstances of the arbitration

agreement indicate an intent to benefit Rimrock, which is required for a third-party beneficiary to enforce a contract.  Docket No. 50 at 10–11 (citing *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994)).  As to the agreement's language, the Court found no intent to benefit Rimrock, but rather found that the language disproved any notion of an intent to benefit Rimrock.  *Id.* at 11.

Finally, Rimrock argued that, even if the Court were to deny its motion to compel, the Court should find that the case must proceed on an individual, rather than class, basis.  Docket No. 28 at 14.  The arbitration agreement provides that plaintiff "waive[s] any right to any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action."  Docket No. 28-2 at 6.  Rimrock argued that, because the class action waiver mentions "disputes," but not "claims," plaintiff's waiver is not tied to his claims against Rimrock, but rather only to his broader disputes involving Kestrel.  Docket No. 28 at 14.  The Court again noted that it had already rejected Rimrock's proposed broad definition of "disputes" and, for that reason, rejected Rimrock's assertion that plaintiff must proceed individually in his claims against Rimrock pursuant to the class action waiver.  Docket No. 50 at 13–14.

Rimrock re-states many of these arguments in its motion for reconsideration.  *See generally* Docket No. 51.  Under the clearly erroneous standard, however, "the reviewing court [must] affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Ocelot Oil*, 847 F.2d at 1464 (quoting *U.S. Gypsum*, 333 U.S. at  395).  The Court is not left with such a conviction and denies Rimrock's motion.

6

First, Rimrock argues that, if the Court only took another look at the class action waiver's ("Section 3") plain language, it would see things Rimrock's way.  Docket No. 51 at 3.  As in its original motion, Rimrock insists that, because the section of the agreement dealing with arbitration ("Section 1") uses different words than Section 3, the two sections should be construed differently.  *Id.* at 3–4.  The Court, however, rejected this broad reading of "disputes" because the agreement's arbitration clause is clearly limited to claims between plaintiff and Kestrel.  Docket No. 50 at 7–8 (citing Docket No. 28-2 at 6).  Moreover, the Court found that Rimrock could not point to any language in the agreement that supported its broad reading of the contract language.  Although Rimrock points the Court to Sections 1 and 3 in its motion for reconsideration, Rimrock again identifies no language that would support its interpretation.  While Rimrock may disagree with the Court's reading of Section 3, it has not identified any clear error.  Sections 1 and 3 may use slightly different language, but the prefatory paragraph before Section 1, which applies to the entire contract, states, "[t]his Mutual Arbitration Agreement ("Agreement") is between me and Kestrel Field Services, Inc., formerly Kestrel Engineering, Inc. ("Company")."  *See* Docket No. 28-2 at 6.  The placement of this paragraph indicates that it applies to both Sections 1 and 3.  In other words, the entire agreement, including both Sections 1 and 3, is between plaintiff and Kestrel, not Rimrock, which means that, at least on this issue, the sections should have the same scope.

Furthermore, Section 1 begins, "[t]he Company and I mutually agree and contract to resolve by arbitration all past, present, or future claims or controversies . . . . All disputes covered by this Agreement will be decided by an arbitrator through

7

individual arbitration, not by way of court or jury trial." *Id.* Given that the agreement is between plaintiff and Kestrel, as indicated by the prefatory paragraph, the plain language of Section 1 and the use of the defined term "Agreement" makes clear that Section 1 applies only to claims between plaintiff and Kestrel.

Section 3 likewise applies only to claims between plaintiff and Kestrel. That section says, "[t]he Company and I waive any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action . . . . Notwithstanding any other provision in this Agreement, this Class Action waiver shall not be severable from this Agreement in any instance in which a dispute is brought by a class and/or collective action." *Id.* Again, the use of the defined terms "Company" and "Agreement" clearly indicate that the class action waiver applies only to claims between plaintiff and Kestrel. The Court finds no clear error in its earlier analysis.

Second, Rimrock argues that the class action waiver applies even if the arbitration agreement does not, and the two sections are severable. Docket No. 51 at 4. Rimrock argues that "[b]eyond being written into the same general Agreement, there is nothing in the Class Action Waiver in Section 3 that ties it to the Arbitration Agreement in Section 1." *Id.* This argument, however, is not persuasive. As the Court has already noted, the prefatory paragraph, which defines the entire agreement as being between plaintiff and Kestrel, applies to both Sections 1 and 3, and Section 3 uses the same defined terms as in the prefatory paragraph and in Section 1. Additionally, Section 3 itself clearly states that it is not severable from Section 1. Section 3 states, "[n]otwithstanding any other provision in this Agreement, this Class Action waiver shall not be severable from this Agreement in any instance in which a

8

dispute is brought by a class and/or collective action."  Docket No. 28-2 at 6.

Rimrock argues that, if Section 3 applied only to arbitrations, the language "brought, heard, [or] decided" would be rendered meaningless surplusage.  Docket No. 51 at 5.  To the extent this argument differs from the arguments made in Rimrock's original motion, the Court will not consider it.  *See Servants of the Paraclete*, 204 F.3d at 1012 (motions to reconsider are inappropriate to advance "new arguments, or supporting facts which were available at the time of the original motion").  Even if this argument were properly before the Court, however, Rimrock has identified at most a different interpretation of the arbitration agreement, not clear error in the Court's earlier analysis.

Third, Rimrock argues that the Court should reconsider its order in light of *Bock v. Salt Creek Midstream, LLC*, 2020 WL 5640669 (D.N.M. Sept. 22, 2020), construing what Rimrock says is the same arbitration agreement.  Docket No. 51 at 7.  Rimrock states that the court in *Bock* held that the plaintiff was required to pursue his claims individually rather than in a class or collective action.  *Id.*  Rimrock concedes that *Bock* does not amount to a change in controlling law.  Rather, Rimrock argues that, for reasons of comity, the Court should reconsider its order so that Section 3 is not construed one way by the District of New Mexico and another way by the District of Colorado.  *Id.*  The *Bock* order relied on an order in *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F. Supp. 3d 1168 (D. Wyo. 2020), which this Court already found distinguishable.  *See* Docket No. 50 at 10 n.6.  Rimrock states that the court in *Snow* "applied New Mexico contract construction principles" and "that the goal in construing

any contract is to determine the parties' intent by applying the plain and ordinary meaning of the contract's language."  Docket No. 51 at 7.  As explained above, the Court found that the plain and ordinary language of the agreement between plaintiff and Kestrel is that Sections 1 and 3 are not severable.  The Court is thus not left with the "definite and firm conviction that a mistake has been committed" in its earlier analysis. *See Ocelot Oil*, 847 F.2d at 1464 (quoting *U.S. Gypsum*, 333 U.S. at  395).

Finally, Rimrock argues that the Court "did not consider the surrounding circumstances," which, Rimrock believes, show that Rimrock "is entitled to arbitrate [plaintiff's] claims as a third-party beneficiary."  Docket No. 51 at 9; *see also Parrish*, 847 P.2d at 1056 (holding that a third party may enforce a contract if the intent to benefit the third party is apparent from the terms, circumstances, or both).  Rimrock is mistaken, however.  First, the Court notes that Rimrock raised these arguments in its original motion, and a motion for reconsideration may not simply repeat arguments made in the original motion.  *See Servants of the Paraclete*, 204 F.3d at 1012.  Second, the Court did consider the surrounding circumstances, which disprove Rimrock's argument.  *See* Docket No. 50 at 10–11 (quoting *Parrish*, 874 P.2d at 1056).  Finally, two of the three circumstances that Rimrock enumerates – (1) that plaintiff worked for Kestrel several times prior to his work on Rimrock's project and was aware that Kestrel is a staffing company and (2) that plaintiff "had to have known there was another party involved in the arrangement" – do not indicate an intent to benefit Rimrock.  *See* Docket No. 51 at 10.  The third circumstance that Rimrock lists is that "[b]oth parties to the agreement knew [that plaintiff's] employment with Kestrel was intended to benefit a

third party: [Rimrock]." *Id.* But this purported circumstance simply assumes what Rimrock is trying to prove. The Court finds no clear error because it is not left with the definite and firm conviction that it has made a mistake.

**B.  Order Granting Plaintiff's Motion to Strike and Denying Rimrock's Motion for Leave to Amend**

Next, Rimrock asks the Court to reconsider its order striking Rimrock's third-party complaint against Kestrel. *Id.* at 11. Rimrock, however, states only "[w]hile Rimrock disagrees with the Court's analysis of those issues, it understands the Court has reviewed conflicting authorities, which have not been resolved by the Tenth Circuit or the U.S. Supreme Court, and views the issues differently than Rimrock." *Id.* Rimrock states that it "respectfully requests that the Court reconsider its order at this time because the Court's order denies Kestrel the opportunity to defend its actions, which gave rise to [plaintiff's] complaints in the first place, and which, Rimrock believes, will eventually give rise to an indemnity obligation on Kestrel's part." *Id.*

Rimrock thus has not identified any clear error in the Court's order granting plaintiff's motion to strike and denying Rimrock's motion for leave to amend, and the Court finds none. Rather, Rimrock again cites the order in *Bock*, which is not binding on this Court. Rimrock bemoans the Court's previous order as putting "Kestrel in an unenviable position" of not being able to defend itself in this action. *Id.* at 12. The possibility that litigation may put a non-party in an "unenviable" position is not sufficient to justify the Court's reconsideration of a previous order where there is no clear error in the Court's analysis.

11

**IV.  CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Motion for Reconsideration of Orders Denying Motion to Compel

Arbitration [Doc. 50] and Granting Motion to Strike [Doc. 49] [Docket No. 51] is

**DENIED**.

DATED September 15, 2021

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

12